24-cv-06159

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

In re SAS AB, et al., Reorganized Debtors

CAVIC 31 Designated Activity Company and
CAVIC 41 Designated Activity Company,

Appellants,

v.

Scandinavian Airlines System Denmark-Norway-Sweden and
Gorm Light Blue Limited,

Appellees.

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR THE APPELLANTS

WATSON FARLEY & WILLIAMS LLP
John G. Kissane
Celinda J. Metro
120 West 45th Street, 20th Floor
New York, NY 10036

## <u>CORPORATION DISCLOSURE STATEMENT</u>

Pursuant to Rules 8012(a) and 8014(a)(1) of the Federal Rules of Bankruptcy Procedure, Appellants' undersigned counsel hereby certifies that Appellants CAVIC 31 Designated Activity Company and CAVIC 41 Designated Activity Company are each 100% owned by CAVIC Aviation Leasing (Ireland) Co., Designated Activity Company, which is wholly owned by AVIC International Leasing Co., Ltd., a private company registered in the Peoples Republic of China. AVIC Industry-Finance Holdings Co., Ltd. is a parent of AVIC International Leasing Co., Ltd. and is a publicly held company which indirectly owns less than 50% of Appellants' stock.  There are no other publicly held corporations that own 10% or more of Appellants' stock, directly or indirectly.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................2

STATEMENT OF APPELLATE JURISDICTION ...................................................5

STATEMENT OF THE ISSUES.....................................................................6

STANDARD OF REVIEW ..........................................................................6

STATEMENT OF THE CASE........................................................................7

SUMMARY OF THE ARGUMENT ..................................................................11

ARGUMENT ....................................................................................15

I.    THE CAPE TOWN CONVENTION, PROTOCOL AND
      ALTERNATIVE A AS ADOPTED BY SWEDEN SHOULD APPLY ......15

   A.   The Convention And Its Rules of Interpretation Dictate that
        Sweden's Adoption of Alternative A Should Apply ..................................15

   B.   Choice of Law Analysis Requires Application of Swedish Law................20

II.   HAD ALTERNATIVE A BEEN APPLIED CAVIC WOULD HAVE
      BEEN PAID THE CONTRACTUAL AMOUNT BY THE ESTATE.........22

III.  SWEDEN'S ALTERNATIVE A OBLIGATES DEBTORS TO
      RETURN AIRCRAFT AFTER WAITING PERIOD, OR HONOR
      CONTRACTUAL OBLIGATIONS ...........................................................23

CONCLUSION ...................................................................................36

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Airasia X Bhd v. BOC Aviation Ltd & Ors*,
   High Court (Kuala Lumpur), 19 February 2021, [2021] 10 MLJ 942.................. 28

*Babcock v. Jackson*,
   12 N.Y.2d 473 (1963) ........................................................................... 21

*Bacardi Corp. of Amer. v. Domenech*,
   311 U.S. 150, 61 S.Ct. 219, 85 L.Ed. 98 (1940)................................... 15

*Factor v. Laubenheimer*,
   290 U.S. 276, 54 S.Ct. 191, 78 L.Ed. 315 (1933)................................ 15

*In re Airlift Int'l, Inc.*,
   761 F.2d 1503 (11th Cir. 1985).............................................................. 36

*In re Enron*,
   364 B.R. 482 (S.D.N.Y. 2007)................................................................. 6

*In re Tyson*,
   433 B.R. 68 (S.D.N.Y. 2010)................................................................... 7

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
   108 F.3d 1531 (2d Cir. 1997).................................................................. 21

*Louisiana Revitalization Fund LLC v. Starr Surplus Lines Insurance Co.*,
   No. 23-CV-1006(VSB)(VF), 2024 WL 1337617
   (S.D.N.Y. Mar. 27, 2024)....................................................................... 21

*Pescatore v. Pan Am. World Airways, Inc.*,
   97 F.3d 1 (2d Cir. 1996)......................................................................... 20

*St. Clair v. Cadles of Grassy Meadows II, L.L.C.*,
   550 B.R. 655 (E.D.N.Y. 2016)................................................................. 7

*U.S. v. Stuart*,
   489 U.S. 353, 109 S.Ct. 1183, 103 L.Ed.2d 388 (1989)....................... 15

**Statutes**

28 U.S.C. §158(a)(1) ................................................................ 5
11 U.S.C. §1110 ...................................................................... 22

**Rules**

Fed. R. Bankr. Pro. 8002(a)(1) ................................................ 5

**Other Authorities**

*Convention on Int'l Ints. in Mobile Equip. & Protocol to Convention on
Int'l Ints. in Mobile Equip.*, S. Treaty Doc. No. 108-10 (Nov. 16, 2001) .............. 2

*Official Commentary to the Convention on International Interests in Mobile
Equipment and Protocol Thereto on Matters Specific to Aircraft Equipment* (5th
Ed. 2022) .............................................................................. 13, 25, 35

*The Cape Town Convention on International Interests in Mobile Equipment:
a Driving Force for International Asset-Based Financing*, Roy Goode, Uniform
Law Review 2002 .................................................................. 16

CAVIC 31 Designated Activity Company ("**CAVIC 31**") and CAVIC 41 Designated Activity Company ("**CAVIC 41**" and together with CAVIC 31, "**CAVIC**" or "**Appellants**"), by and through its undersigned counsel, make limited, special appearances[1] to appeal the *Decision Regarding Debtors' Thirty-Second and Thirty-Fourth Omnibus Objections Insofar as They Relate to Administrative Expense Claims Filed by CAVIC 31 Designated Activity Company and CAVIC 41 Designated Activity Company*, entered July 22, 2024 (Dkt. No. 2877, the "**Decision**"), and the subsequently entered *Order Granting Thirty-Second Omnibus Objection of Debtors to (I) Disallow and Expunge Certain Claims and (II) Reduce and Allow Claim No. 1217*, entered July 22, 2024 (Dkt. No. 2878, the "**Claim No. 1217 Order**"), and *Order Granting Thirty-Fourth Omnibus Objection of Debtors to (I) Disallow and Expunge Claim Nos. 1038 and 1187, and (II) Reduce and Allow Claim No. 1218*, entered July 22, 2024 (Dkt. No. 2879, the "**Claim No. 1218 Order**" and together with Claim No. 1217 Order, the "**Claim Orders**"). In support of their appeal, CAVIC states as follows:

---

[1] Appellants make this special appearance to appeal the Decision (as defined herein), and do not waive any arguments they may have that they are not subject to personal jurisdiction in New York or this Court.

## PRELIMINARY STATEMENT

In a matter of apparent first impression, the Bankruptcy Court ignored this country's adoption of an international treaty, permitting foreign Debtors to forum shop and use U.S. bankruptcy law to avoid their obligations to creditors, and denying creditors millions in administrative claims. Debtors continued to operate CAVIC's aircraft in revenue service extensively after the petition date, before ultimately rejecting the relevant aircraft leases with CAVIC and returning physical possession of the aircraft to CAVIC in February 2023 – almost seven months after commencing bankruptcy proceedings. However, Debtors refused to provide payments to CAVIC and otherwise comply with their obligations under the terms of applicable leases. CAVIC sought to recover these amounts in fully during this pre-rejection as administrative expenses. The Bankruptcy Court, however, incorrectly applied U.S. bankruptcy law and denied CAVIC's claims, instead requiring Debtors to pay only the interim payments required under the parties' Stipulations (defined below).

The Bankruptcy Court should have applied Swedish law to determine CAVIC's claims, because the United States is a signatory to the Cape Town Convention on International Interests in Mobile Equipment (the "**Cape Town Convention**" or "**Convention**")[2] and the Protocol on Matters Specific to Aircraft

---

[2] *Convention on Int'l Ints. in Mobile Equip. & Protocol to Convention on Int'l Ints. in Mobile Equip.*, S. Treaty Doc. No. 108-10 (Nov. 16, 2001).

Equipment (the "**Aircraft Protocol**" or "**Protocol**"), which are intended to be read together. The Convention and Protocol allow signatories ("**Contracting States**") to make an election, under Protocol Article XI, between two remedies regimes: Alternative A or Alternative B. Protocol, Art. XXX(3) ("A Contracting State may, at the time of ratification, acceptance, approval of, or accession to this Protocol, declare that it will apply the entirety of Alternative A or… Alternative B of Article XI…".) The Protocol requires other Contracting States to apply Article XI [Alternative A or B as applicable] in conformity with the declaration made by the Contracting State which is the primary insolvency jurisdiction. Protocol, Art. XXX(4) (*see* Dkt. No.[3] 2816 at p. 137).

Debtors do not dispute that Sweden is Debtors' primary insolvency jurisdiction ("**PIJ**"). Dkt. No. 2877 at p. 4; Transcript[4] at p. 23. However, the Debtors did dispute the applicability of Alternative A and the Bankruptcy Court held that Sweden did not adopt Alternative A (and consequently, that it need not apply Alternative A) because Sweden did not make a formal declaration of its adoption of

---

[3] "Dkt. No." refers to entries with respect to *In re SAS*, No. 22-10925 (Bankr. S.D.N.Y.).

[4] "Transcript" refers to the transcript of the hearing held on July 18, 2024 before the Bankruptcy Court regarding CAVIC's claims and Debtors' objections thereto. *See* Dkt. No. 2883.

Alternative A to UNIDROIT (the International Institute for the Unification of Private Law, and repository for Convention declarations).

That erroneous conclusion stands in opposition to the clear declaration made to UNIDROIT by the European Union ("**EU**") on behalf of its Member States (including Sweden). While the EU adopted the Convention on behalf of most EU Member States, including Sweden, it did not make an election of Alternatives A or B. Additionally, EU Member States were prohibited by EU law from making a direct election themselves. Instead, the EU declared to UNIDROIT that Member States "may amend their national law so as to result in the same substantive outcomes as if a declaration had been made under Article XXX(3)."[5]

This is precisely what Sweden did, adopting Alternative A in its entirety into domestic legislation. *See* Declaration of Stephan Eriksson ("**Decl. of Eriksson**"), Dkt. No. 2653-2 at p.2. Therefore, the Bankruptcy Court was obligated by the Convention to apply Alternative A to CAVIC's claims against the Debtors, rather than U.S. bankruptcy law. Even if the Bankruptcy Court was not obligated to apply

---

[5] "Declarations deposited under the Protocol to the Convention on International Interests in Mobile Equipment on Matters Specific to Aircraft Equipment regarding XXX(3)" at "States Giving Effect to Article XI by Domestic Legislation," https://www.unidroit.org/instruments/security-interests/aircraft-protocol/depositary/declarations-deposited-under-the-protocol-to-the-cape-town-convention-on-international-interests-in-mobile-equipment-on-matters-specific-to-aircraft-equipment-arranged-by-article/article-xxx3/ .

Alternative A pursuant to the terms of the Convention, a choice of law analysis reaches the same result, as Sweden has the most significant interest in this matter.

The Bankruptcy Court also erred in concluding that, even if Alternative A applied, that U.S. law should still apply to determine the calculation, priority and treatment of CAVIC's claims. However, in so concluding, the Bankruptcy Court ignores the clear language of the Convention itself, which requires the court to look to the laws of the PIJ (here, Sweden) in determining such matters and applies to both *in rem* and *in personam* rights and obligations. Indeed, the Bankruptcy Court's conclusion permits the very kind of forum shopping the Convention, as an international treaty, was intended to prevent.

For the reasons set forth herein, Appellants respectfully request that this Court direct the Bankruptcy Court to deny Debtors' objections to CAVIC's claims in full.

## STATEMENT OF APPELLATE JURISDICTION

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. §158(a)(1), which grants district courts jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. Appellants appeal the Decision of the Bankruptcy Court, entered on July 22, 2024, and the subsequently entered Claim Orders, also entered July 22, 2024. *See* Dkt. Nos. 2877, 2878, and 2879. Appellants timely filed the notice of appeal on August 5, 2024, pursuant to Federal Rule of Bankruptcy Procedure 8002(a)(1). *See* Dkt. No. 2948.

## STATEMENT OF THE ISSUES

The issues on appeal are:

1.      Whether the Bankruptcy Court erred in concluding that Alternative A is not applicable to the relevant leases and aircraft, notwithstanding the Primary Insolvency Jurisdiction's enactment into domestic law of Alternative A of the Cape Town Convention and Protocol to the Convention on Matters Specific to Aircraft;

2.      Whether the Bankruptcy Court erred in concluding that even if Alternative A as adopted under the domestic law of the Primary Insolvency Jurisdiction was applicable, that the domestic law of the Primary Insolvency Jurisdiction does not apply to the calculation, classification, priority and/or treatment of Appellants' claims for payment in respect of Debtors' obligations to Appellants under the relevant leases; and

3.      Whether the Bankruptcy Court erred in concluding that even if Alternative A was applicable, that Alternative A as adopted under the domestic law of the Primary Insolvency Jurisdiction only applies to obligations in respect of *in rem* rights and matters in respect of the aircraft, and does not apply to *in personam* obligations under the relevant leases.

## STANDARD OF REVIEW

On appeal, this Court reviews a Bankruptcy Court's legal determinations *de novo* and its factual findings for clear error. *See In re Enron*, 364 B.R. 482, 485

(S.D.N.Y. 2007). "When mixed questions are raised on appeal, they are presumptively subject to *de novo* review." *St. Clair v. Cadles of Grassy Meadows II, L.L.C.*, 550 B.R. 655, 665 (E.D.N.Y. 2016). "Under a *de novo* review, the appellate court affords no deference to the Bankruptcy Court's decision and decides the question as if no decision had been previously rendered." *St. Clair*, 550 B.R. at 665 (E.D.N.Y. 2016). "Determination of a foreign country's law is an issue of law" and the Bankruptcy Court's "determination [of foreign law] must be treated as a ruling on a question of law. . . " and therefore reviewed *de novo*. *In re Tyson*, 433 B.R. 68, 79 (S.D.N.Y. 2010) (internal quotations omitted).

## STATEMENT OF THE CASE

Scandinavian Airlines System Denmark-Norway-Sweden ("**SAS DNS**") and Gorm Light Blue Ltd. ("**Gorm Light Blue**") and certain affiliates (collectively "**Debtors**") filed for Chapter 11 bankruptcy in the Bankruptcy Court on July 5, 2022.[6] At the time SAS DNS commenced bankruptcy proceedings, CAVIC 31, as

---

[6] *See* Dkt. Nos. 22-1092 and 22-10936; the Bankruptcy Court ordered these and affiliated proceedings jointly administered under 22-10925. *See* Dkt. No. 18. The Debtors in these chapter 11 cases are SAS AB, SAS Danmark A/S, SAS Norge AS, SAS Sverige AB, Scandinavian Airlines System Denmark-Norway-Sweden, Scandinavian Airlines of North America Inc. (2393), Gorm Asset Management Ltd., Gorm Dark Blue Ltd., Gorm Deep Blue Ltd., Gorm Sky Blue Ltd., Gorm Warm Red Ltd., Gorm Light Blue Ltd., Gorm Ocean Blue Ltd., and Gorm Engine Management Ltd. The Debtors' mailing address is AVD kod: STOUU-T, SE-195 87 Stockholm, Sweden.

Lessor, leased aircraft bearing manufacturer's serial number 1660 ("**MSN 1660**") to SAS DNS, as Lessee, pursuant to the Aircraft Lease Agreement dated 22 August 2014 (as novated and amended, the "**1660 Lease**"). While Debtors continued to operate MSN 1660 post-petition, CAVIC 31 and Debtors executed a stipulation in respect of MSN 1660, entered November 1, 2022. Dkt. No. 572 (the "**1660 Stipulation**").

At the time Gorm Light Blue commenced bankruptcy proceedings, Wilmington Trust SP Services (Dublin) Limited ("**Wilmington Trust**"), as owner trustee, as Lessor, and CAVIC 41, as Beneficial Owner, leased aircraft bearing manufacturer's serial number 9173 ("**MSN 9173**") to Gorm Light Blue pursuant to the Operating Lease Agreement, dated 9 January 2019 (as amended, novated and supplemented the "**9173 Lease**", and together with the 1660 Lease, the "**Leases**")). While Debtors continued to operate MSN 9173 post-petition, CAVIC 41, on behalf of Wilmington Trust, and Debtors executed a stipulation for MSN 9173, entered November 1, 2022. Dkt. No. 573, (the "**9173 Stipulation**" and together with the 1660 Stipulation, the "**Stipulations**"). Both Stipulations provided that "the Debtors shall pay to [CAVIC] the applicable interim payments set forth in Exhibit B. . ." in consideration of the extension of the Waiting Period, and subject to the reservation

of rights detailed in the Stipulations. *See* Dkt. Nos. 572 and 573 at ¶¶3, 8 and 12[7], and Ex. B. Debtors breached both of the Stipulations and failed to make certain payments to CAVIC, but continued to operate both Aircraft extensively.

On January 9, 2023, Debtors filed a motion to reject the Leases effective February 1, 2023 (the "**Rejection Date**"). Dkt. No. 785 (the "**Rejection Motion**"). On January 30, 2023, the Bankruptcy Court granted the Rejection Motion, permitting Debtors to reject the Leases. *See* Dkt. No. 860 (the "**Rejection Order**"). The Rejection Order "is without prejudice to the rights of (i) any Lessor... to assert (A) a claim for rejection damages for failure by the Debtors to satisfy all surrender, return, or turnover provisions. . . under the applicable Lease, under the Bankruptcy Code, under the Protocol to the Cape Town Convention. . . (B) a claim or entitlement to payment for post-petition rent, supplemental rent, or other obligations under such Lease, if any, or (C) any administrative expense claim that arises out of or relates to any Lease. . .". Dkt. No, 860 at ¶6. Pursuant to the Rejection Order, the 1660 Lease and 9173 Lease were rejected effective February 1, 2023 and Debtors provided

---

[7] "[T]his Stipulation does not limit or affect the rights, remedies or claims of [CAVIC] under the Bankruptcy Code, the Cape Town Treaty [Convention] and/or applicable law. . . including, without limitation: (a) the right. . . of the Counterparties to assert that the amount and/or priority of the rent or other payables required to be paid under Alternative A. . . are greater than the amounts set forth in Exhibit B hereto and/or are entitled to administrative expense claim status or priority. . .". Stipulations at ¶12.

CAVIC physical possession of the Aircraft on the same date.

After the issuance of the Rejection Order, CAVIC 31 filed amended claims (Claim No. 1186 then No. 1217) reflecting a reduction of damages due to CAVIC re-leasing MSN 1660 to SAS DNS (*see* Dkt. No. 1522). Claim No. 1217 is CAVIC 31's operative claim in respect of MSN 1660. CAVIC 41 also filed an amended claim (Claim No. 1187) for damages resulting from Debtors' rejection of the 9173 Lease and breach of the 9173 Stipulation. CAVIC 41 filed a further amended Claim (Claim No. 1218) after re-leasing the aircraft, which is CAVIC 41's operative claim in respect of MSN 9173. In both of CAVIC's operative claims, CAVIC sought as administrative expenses the contracted amounts due and owing under the terms of the Leases for the Debtors' post-petition use of the Aircraft (having expressly reserved the right to do so under the Stipulations), which amounts were greater than the interim payments required of Debtors in the Stipulations.

Debtors filed objections to CAVIC 31's claim (Dkt. 2575, the "**1660 Objection**"), and CAVIC 41's claim (Dkt. 2594, the "**9173 Objection**", and together with the 1660 Objection, the "**Claim Objections**"). In the Claim Objections, Debtors took the position that CAVIC's administrative claims should be reduced to reflect only the amounts Debtors failed to pay under the Stipulations.

CAVIC filed responses to the Claim Objections (*see* Dkt. Nos. 2653, 2752, the "**Responses**"). In the Responses, CAVIC asserted that the Cape Town

Convention and the Protocol and specifically Alternative A thereof as adopted by Sweden applied to CAVIC's claims, entitling CAVIC to the administrative claim amounts sought in their proofs of claim.

Debtors filed an omnibus reply on July 3, 2024. Dkt. No. 2816. CAVIC filed a consolidated sur-reply on July 12, 2024. Dkt. No. 2840. Hearing on the Claim Objections was held before the Bankruptcy Court on July 17, 2024. On July 22, 2024, the Bankruptcy Court issued the Decision (Dkt. No. 2877) and the Claim Orders (Dkt. Nos. 2878 and 2879). CAVIC timely filed its Notice of Appeal on August 5, 2024. No. 2948.

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court should have applied the law of the Debtors' undisputed "primary insolvency jurisdiction," Sweden, which adopted the Convention, Protocol and Alternative A, to resolve CAVIC's claims. The Convention and Protocol provide certain remedies to lessors of aircraft and aviation equipment [described as "Aircraft Objects" in the Convention] in the event of a lessee's default or insolvency. Countries that have adopted the Protocol generally make a choice under Protocol Article XI between two remedial sections: Alternative A, the hard alternative, and the softer Alternative B.[8]

---

[8] No Contracting States have adopted Alternative B. https://awg.aero/wp-content/uploads/2019/10/capetowntreatyinthe-europeancontext.pdf

It is undisputed that Sweden is Debtors' primary insolvency jurisdiction under the Convention. Dkt. No. 2877 at p. 4; Transcript at p. 23. The United States, as a signatory to the Convention, is required to apply the PIJ's version of the Convention pursuant to Article XXX(4)[9], meaning Sweden's adoption of the Convention is controlling.

The EU adopted the Cape Town Convention and Protocol on behalf of most EU Member States, including Sweden.[10] The EU, however, did not adopt either Alternative A or B, wishing to leave it to each individual Member State.  However, under EU law Member States are not permitted to make any declaration regarding the Convention or the Alternatives. The EU noted in its adoption of the Convention and Protocol that while Member States cannot make a declaration to UNIDROIT they are free to adopt domestic legislation to supplement the Protocol as adopted by the EU.

Sweden did just that, adopting the Convention, Protocol and Alternative A in its entirety into its domestic legislation. Decl. of Eriksson, Dkt. No. 2653-2 at p. 2.

_____

[9] "4. The courts of Contracting States shall apply Article XI [Alternative A or B] in conformity with the declaration made by the Contracting State which is the primary insolvency jurisdiction." Protocol, Art. XXX(4).

[10] 2009/370/EC: Council Decision of 6 April 2009 on the accession of the European Community to the Convention on international interests in mobile equipment and its Protocol on matters specific to aircraft equipment, adopted jointly in Cape Town on 16 November 2001. https://eur-lex.europa.eu/legal-content/EN/TXT/?uri=celex%3A32009D0370

The repository of the Convention maintained by UNIDROIT[11] notes the following on the page setting forth various nations' declarations:

### STATES GIVING EFFECT TO ARTICLE XI BY DOMESTIC LEGISLATION

The declarations made by the European Union under the Aircraft Protocol, together with the regulations referred to in those declarations, affect the capacity of EU Member States to make declarations under Article XXX(3) of the Aircraft Protocol, concerning Article XI of the said Protocol. European Member States, however, may amend their national law *so as to result in the same substantive outcomes as if a declaration had been made under Article XXX(3)*.[12]

The official commentary on the Cape Town Convention and Protocol also recognized that EU Member States are prohibited from making the relevant declaration under EU law but "are free to implement such parts of Article XI as they wish in domestic legislation."[13]

The Bankruptcy Court erred in failing to apply Alternative A of the Protocol, which was adopted in whole into Swedish law, requiring the debtor, by the end of

---

[11] The International Institute for the Unification of Private Law.

[12] "Declarations deposited under the [Protocol]… regarding XXX(3)" at "States Giving Effect to Article XI by Domestic Legislation," https://www.unidroit.org/instruments/security-interests/aircraft-protocol/depositary/declarations-deposited-under-the-protocol-to-the-cape-town-convention-on-international-interests-in-mobile-equipment-on-matters-specific-to-aircraft-equipment-arranged-by-article/article-xxx3/ (emphasis added).

[13] *Official Commentary to the Convention on International Interests in Mobile Equipment and Protocol Thereto on Matters Specific to Aircraft Equipment*, (5th Ed. 2022), p 2521 (the "**Official Commentary**").

the "waiting period" specified by the Contracting State's (i.e. Sweden's) to either give possession of the aircraft object to the creditor or, if a debtor wishes to retain possession of the aircraft after the waiting period it must have "cured all defaults other than a default caused by the opening of the insolvency proceedings and … agreed to perform all future obligation under the agreement." *Id*. at Article XI, Alternative A(7).

Debtors' failure to make an election by the end of the waiting period is an election itself under the Protocol, requiring Debtors to perform in accordance with the Leases. Accordingly, Debtors should have been required to pay CAVIC the rent and other amounts set forth in the Leases, not the arbitrary "fair market value" determined by the Bankruptcy Court.

The failure of the Bankruptcy Court to apply the Convention and Protocol adopted and enacted by Sweden, as required under United States treaty law, resulted in CAVIC's claim of $11,930,279.25 (for rent and other payments due post-petition for the two Aircraft leased to the Debtors) being reduced to $810,000.00 based upon the Bankruptcy Court's judgement as to the fair rental value of the Aircraft during the post-petition use period. Additionally, the Bankruptcy Court failed to require the Debtors to pay maintenance costs required under the Leases of $6,237,945.01. A choice of law analysis similarly requires application of Swedish law.

Alternatively, even if the Convention and Protocol were not applicable, the Bankruptcy Court erred in failing to consider the benefit to Debtors' estate of the use the Aircraft when determining the CAVIC's administrative claim.

## ARGUMENT

I.    **THE CAPE TOWN CONVENTION, PROTOCOL AND ALTERNATIVE A AS ADOPTED BY SWEDEN SHOULD APPLY**

The Supreme Court has stated "a treaty should generally be 'construed . . . liberally to give effect to the purpose which animates it and . . . even where a provision of a treaty fairly admits of two constructions, one restricting, the other enlarging, rights which may be claimed under it, the more liberal interpretation is to be preferred.'" *U.S. v. Stuart*, 489 U.S. 353, 368, 109 S.Ct. 1183, 1192, 103 L.Ed.2d 388 (1989) (quoting *Bacardi Corp. of Amer. v. Domench*, 311 U.S. 150, 163, 61 S.Ct. 219, 225, 85 L.Ed. 98 (1940)). *See also Factor v. Laubenheimer*, 290 U.S. 276, 193, 54 S.Ct. 191, 196, 78 L.Ed. 315 (1933) ("Considerations which should govern be liberally construed so as to effect the apparent intention of the parties to secure equality and reciprocity between them.").

If there are uncertainties regarding the application of the Convention, the Convention itself includes rules of interpretation. The Bankruptcy Court ignored the plain language of the Convention and Protocol, and these rules of interpretation, which dictate that Alternative A as adopted by Sweden should have been applied to resolve CAVIC's claims.

A.    <u>The Convention And Its Rules of Interpretation Dictate that Sweden's Adoption of Alternative A Should Apply</u>

The Bankruptcy Court erred by failing to recognize and apply Sweden's effective enactment and adoption of Alternative A into its domestic law, despite the fact that Sweden could not make a declaration to UNIDROIT under EU law. Alternatives A or B in Article XI are extraordinarily important parts of the Convention and dictate the rights of creditors in the event of an insolvency. As the noted Professor Roy Goode, the author of the Official Commentary stated:

> Perhaps the most significant provision is Article XI, which lays down two alternative regimes for remedies on insolvency, dependent on a declaration by a Contracting State, which may adopt either alternative, though only in its entirety, or may make no declaration at all, and thus apply its own insolvency rules. Alternative A. . . requires the insolvency administrator, within whatever is specified by a Contracting State as the waiting period, to cure all defaults and agree to perform all future obligations, failing which the administrator must give the creditor the opportunity to take possession of the aircraft object. Under this alternative the court has no powers of intervention, so that Article 30(3)(b) of the Convention, which preserves the power of the court to stay enforcement (*e.g.*, to facilitate a reorganisation of an insolvent debtor), is disapplied.[14]

Articles 5 and 6 of the Cape Town Convention provide guidance on its interpretation and are controlling when the Convention is applicable, particularly

---

[14] *The Cape Town Convention on International Interests in Mobile Equipment: a Driving Force for International Asset-Based Financing*, Roy Goode, Uniform Law Review 2002, 1-15, at "XII. – The Aircraft Equipment Protocol"; https://www.unidroit.org/instruments/security-interests/cape-town-convention/overview/#:~:text=Perhaps%20the%20most,court%20may%20order.

when a court is faced with a matter of first impression, as is apparently the case here,

at least in the United States. The rules of interpretation provide:

**Article 5 – Interpretation and Applicable Law**

1. In the interpretation of this Convention, regard is to be had to its purposes as set forth in the preamble, to its international character and to the need to *promote uniformity and predictability in its application*.

2. Questions concerning matters governed by this Convention which are not expressly settled in it are to be settled in conformity with the general principles on which it is based or, in the absence of such principles, *in conformity with the applicable law*.

3. References to the applicable law are to the domestic rules of the law applicable by virtue of the rules of private international law of the forum State.

4. Where a State comprises several territorial units, each of which has its own rules of law in respect of the matter to be decided, and where there is no indication of the relevant territorial unit, the law of that State decides which is the territorial unit whose rules shall govern. In the absence of any such rule, the law of the territorial unit with which the case is most closely connected shall apply.

**Article 6 – Relationship Between the Convention and the Protocol**

1. This Convention and the Protocol shall be read and interpreted together as a single instrument.

2. To the extent of any inconsistency between this Convention and the Protocol, the Protocol shall prevail.

Convention at Art. 5 and 6 (emphasis added).

The Bankruptcy Court's decision to ignore Sweden's adoption of Alternative

A in favor of U.S. bankruptcy law directly contradicts these rules of interpretation.

The reference in paragraph 1 of Article 5 to the need to promote uniformity and

predictability dictates avoiding reference to national law wherever the Convention itself does not refer an issue to the applicable law. Paragraph 2 directs that matters not expressly stated in the Convention should be determined by the general principles on which it is based, and resort to the applicable forum's law should be used only for matters not contemplated by the Convention.  As noted in the Official Commentary, "except where otherwise provided, the Convention provisions are to be accorded an autonomous interpretation and should be construed according to the intention of the States Parties as expressed in the text, not according to the canons of interpretation of domestic law." Dkt. No. 2816. at p. 161.

Here, by permitting Debtors domiciled in, and whose PIJ is, Sweden to avoid Sweden's clear desire to adopt Alternative A of the Protocol, which would have been applicable in an insolvency in Sweden, and instead use U.S. bankruptcy law contravenes the rules of interpretation.

Ignoring the Convention and applying the forum State's law not only violates the first rule of interpretation to promote uniformity, it also encourages forum shopping by insolvent borrowers and lessees seeking the most favorable insolvency jurisdiction. EU Member States are major financiers in the aircraft industry[15] and

---

[15] "By 2027, the European aircraft leasing industry is poised to reach an estimated value of $42.6 billion." https://www.aerospacedefensereview.com/news/the-future-of-aircraft-leasing-and-financing-in-europe-nwid-1443.html.

they cannot make such declarations to UNIDROIT, which is noted on the declaration page of UNIDROIT and in the Official Commentary to the Convention with the direction to consult the domestic law of the Contracting State which, if it has adopted the relevant Alternative, should "*result in the same substantive outcomes as if a declaration had been made under Article XXX(3).*"[16] The conspicuous note on the declaration page of UNIDROIT provides notice to Contracting States, which is the main purpose of such declarations. *See* Transcript at p. 43 (examination of Dr. Mokal).

The fourth rule of interpretation also dictates that Swedish law is applicable. It is undisputed that Sweden, an EU territorial unit, was, as the Bankruptcy Court put it, the "COMI," or PIJ[17] of the Debtors. According to the fourth rule of interpretation, "the law of the territorial unit with which the case is most closely connected shall apply," in other words, the law of the COMI or PJI. Therefore, the law of the PJI should supplement the Convention where necessary. This conclusion

---

[16]"Declarations deposited under the [Protocol]… regarding XXX(3)" at "States Giving Effect to Article XI by Domestic Legislation," https://www.unidroit.org/instruments/security-interests/aircraft-protocol/depositary/declarations-deposited-under-the-protocol-to-the-cape-town-convention-on-international-interests-in-mobile-equipment-on-matters-specific-to-aircraft-equipment-arranged-by-article/article-xxx3/ (emphasis added).

[17]" Q: So they [CAVIC] argue that Sweden is the right place to consider its COMI and they consider all these issues. Do you dispute that? A: We don't dispute that." Dkt 2877. Transcript p. 23.

is supported by the other rules of interpretation, which direct that the Convention should be used to resolve matters within its purview whenever possible rather than the law of the forum, as was done here.

Additionally, as noted by Debtors' expert, Dr. Mokal, the general principles upon which the Convention was based are practicality, party autonomy, predictability, transparency and sensitivity to national legal cultures. Transcript at 47. By adopting the whole of the Convention and Protocol including Alternative A into its domestic legislation,[18] Sweden has indicated its choice. Ignoring Swedish law, and the fact that EU Member States cannot make an official declaration of Alternative A to UNIDROIT under EU law, appears to contravene most of the principles on which the Convention was based, including party autonomy and sensitivity to national legal cultures.

B.    Choice of Law Analysis Requires Application of Swedish Law

Had the Bankruptcy Court engaged in a choice of law analysis as urged by CAVIC, instead of reflexively applying U.S. bankruptcy law, it would have also applied Swedish law including Alternative A of the Protocol. Federal courts in the Second Circuit generally apply the forum State's choice of law rules. This appears to be the case even when jurisdiction is predicated on a federal question presented

---

[18] Decl of Eriksson, Dkt. No. 2653-2 at p. 2.

under a Convention. *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 12 (2d Cir. 1996)(applying New York's choice of law rules to decide question under Warsaw Convention). "New York courts apply a 'center of gravity' or 'grouping of contacts' approach to decide choice-of-law questions." *Louisiana Revitalization Fund LLC v. Starr Surplus Lines Insurance Co.*, No. 23-CV-1006 (VSB) (VF), 2024 WL 1337617, at *7 (S.D.N.Y. Mar. 27, 2024) citing *Lazard Freres & Co. v. Protective Life Ins. Co*., 108 F.3d 1531, 1539 (2d Cir. 1997) (citing *Babcock v. Jackson*, 12 N.Y.2d 473 (1963)). "Using this approach, 'courts may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties.'" *Id*.

It is undisputed that Debtors, as part of the SAS Airlines Group, were headquartered in Sweden and that Sweden is the PIJ of Debtors. CAVIC is a Chinese leasing company. Sweden clearly has the greatest interest in facilitating the restructuring of its major airline and  it is the location of most of the significant contacts, particularly in an insolvency. Additionally, Sweden has clearly expressed its desire to implement the Convention and Protocol, including Alternative A by adopting it into domestic legislation as advised by the EU and UNIDROIT. Accordingly, to the extent that the Bankruptcy Court was not strictly required to apply Sweden's adoption of Alternative A because no official declaration was made

by Sweden to UNIDROIT, Swedish law should have been used to supplement the EU's adoption of Convention and Protocol on behalf of its Member States. To find otherwise ignores Sweden's clear mandate and promotes forum shopping.

## II.    HAD ALTERNATIVE A BEEN APPLIED CAVIC WOULD HAVE BEEN PAID THE CONTRACTUAL AMOUNT BY THE ESTATE

Alternative A of Protocol Article XI provides that upon the occurrence of an "insolvency-related event," the debtor or insolvency representative must by the earlier of (i) the end of the "waiting period" specified in the declaration by the Contracting State that is the debtor's "primary insolvency jurisdiction" (PIJ, which is found at the "centre of the debtor's main interests" or COMI) or (ii) the date when the creditor would be entitled to possession if Article XI did not apply (i.e., under domestic insolvency law, which independently may have established a waiting period, such as the Bankruptcy Code's section 1110); either (A) give possession of the aircraft object to the creditor, or (B) cure all defaults (other than the opening of insolvency proceedings) and agree to perform relevant future obligations.

Sweden, in codifying the Convention and Protocol, chose Alternative A and selected a 60-day waiting period. Swedish Law Decl.; Dkt. No. 2752-2 at p.3. In such circumstances:

> [t]he obligation of a court of the United States under Protocol Article XXX(4) to apply the declaration of another Contracting State concerning Article XI is mandatory. The clear language of paragraph (4) does not admit of exceptions. It follows that a court of the United States having jurisdiction over an X Airline Chapter 11 case must apply

Article XI Alternative A in conformity with the declaration of State X. Indeed, this treaty obligation would override any inconsistent provision of the Bankruptcy Code.[19]

In light of the foregoing, the Bankruptcy Court erred in concluding that even if Alternative A was applicable (which it is), that the domestic law of Sweden does not apply to the calculation, classification, priority and/or treatment of CAVIC's claims.

## III. SWEDEN'S ALTERNATIVE A OBLIGATES DEBTORS TO RETURN AIRCRAFT AFTER WAITING PERIOD, OR HONOR CONTRACTUAL OBLIGATIONS

Alternative A of Protocol Article XI provides:

ARTICLE XI – Remedies on insolvency

Alternative A

2. Upon the occurrence of an insolvency-related event, *the insolvency administrator or the debtor, as applicable, shall, subject to paragraph 7, give possession of the aircraft object to the creditor no later than the earlier of:*

*(a) the end of the waiting period;* and

(b) the date on which the creditor would be entitled to possession of the aircraft object if this Article did not apply.

---

[19] *INDEPENDENT EXPERT OPINION Concerning the application of the Convention on International Interests in Mobile Equipment and its Aircraft Protocol under Chapter 11 of the U. S. Bankruptcy Code involving a non-US debtor*, Mooney and Pattow (May 2024) Doc 2752-1.

3. For the purposes of this Article, the "waiting period" shall be the period specified in a declaration of the Contracting State which is the primary insolvency jurisdiction.

. . .

5. *Unless and until the creditor is given the opportunity to take possession under paragraph 2:*

*(a) the insolvency administrator or the debtor, as applicable, shall preserve the aircraft object and maintain it and its value in accordance with the agreement; and*

*(b) the creditor shall be entitled to apply for any other forms of interim relief available under the applicable law.*

6. Subparagraph (a) of the preceding paragraph shall not preclude the use of the aircraft object under arrangements designed to preserve the aircraft object and *maintain it and its value.*

7. *The insolvency administrator or the debtor, as applicable, may retain possession of the aircraft object where, by the time specified in paragraph 2, it has cured all defaults other than a default constituted by the opening of insolvency proceedings and has agreed to perform all future obligations under the agreement.* A second waiting period shall not apply in respect of a default in the performance of such future obligations.

*       *       *

9. No exercise of remedies permitted by the Convention or this Protocol may be prevented or delayed after the date specified in paragraph 2.

10. *No obligations of the debtor under the agreement may be modified without the consent of the creditor.*

11. Nothing in the preceding paragraph shall be construed to affect the authority, if any, of the insolvency administrator under the applicable law to terminate the agreement.

. . .

13. The Convention as modified by Article IX of this Protocol shall apply to the exercise of any remedies under this Article.

24

Protocol, Article XI, Alternative A (emphasis added).

Alternative A of Protocol Article XI provides that upon the occurrence of an "insolvency-related event", which includes the commencement of an insolvency proceeding (*see* Protocol Article I(2)(m)), it is the obligation of the debtor to either cure defaults or give possession of the aircraft to the creditor within the waiting period. Eriksson Decl., Dkt. No. 2653-2 at ¶ 10. Debtors filed their petition on July 5, 2022. The end of the waiting period was on September 3, 2022. That date came and passed without the Debtors giving possession of the two Aircraft to CAVIC. Instead, the Debtors operated the leased Aircraft heavily in revenue generating service.

Critically, Alternative A also provides that "[n]o obligations of the debtor under the agreement may be modified without the consent of the creditor." Article XI Alternative A, ¶10, (Dkt. No. 2816 at p. 129). Moreover, Alternative A, paragraph 10 "prohibits the court from modifying the debtor's obligations without the creditor's consent. . ." and such "obligations. . . include a duty imposed by the agreement to perform obligations under other transaction documents." *See* Official Commentary at ¶3.145. 90. "Thus under Alternative A the court will be precluded from exercising some of the powers it would normally have. . . the justification being the economic benefits anticipated from a clear and unqualified rule. . .. [A]ny provisions of domestic law modifying or empowering a court to modify the debtor's

obligations must be disapplied where these would conflict with paragraph 18 10."
*See id.* at ¶3.145. 91.

It was not until October 20, 2022, after the 60-day waiting period had already expired, that Debtors and the CAVIC lessors executed the Stipulations. However, CAVIC expressly reserved its rights under the Convention:

> Nothing contained herein may be deemed to waive [CAVIC's] claims for the difference between the rent or other obligations payable or performable by the debtors under the [operative documents including the 9173 Lease] through the termination date of the Agreements prior to modification by this Stipulation as compared to the rent or other obligations payable or performable by the Debtors under the [operative documents including the 9173 Lease] through the termination date of the Agreements as modified by this Stipulation, all of which claims are reserved and preserved.

Stipulations at Ex. B.

As noted by CAVIC's Swedish aviation law expert, "Sweden's Alternative A of the Aircraft Protocol allows the creditor and the debtor. . . to agree to other remedies rather than the ones stipulated in the Swedish CTC-law and article XI of the Aircraft Protocol. This optionality of Alternative A is therefore strictly subject to the parties' corresponding *undeniable and irrevocable expression* of will pertaining to the optionality; much like entering into a new agreement. In lieu of such undeniable and irrevocable expression of will or a refusal from either party, the terms and conditions of the underlying agreement between the debtor and the

creditor shall prevail and Alternative A shall be applied without limitation." Eriksson Decl, (Dkt. No. 2653-2 at ¶11-12) (emphasis added).

In light of CAVIC's reservation of rights in the Stipulations, the fact that Debtors breached both Stipulations by failing to make the required payments in a timely manner, and the fact that the Debtors ultimately rejected both Leases, the Stipulations clearly did *not* constitute "undeniable and irrevocable expression of will pertaining to the optionality" as required under Alternative A as enacted in Sweden to modify Debtors' obligations under the Leases. This is because the Debtors did not make a final decision to assume or reject the Leases at the time of the Stipulations. *Id*.

Additionally, even if the Stipulations initially extended the "waiting period" as defined under Swedish law, the Stipulations ceased to be effective upon Debtors' breach thereof (by failing to pay the amounts due under the Stipulations). Under the clear language of the Stipulations, "[t]he Parties have agreed… the continued effectiveness of [the Stipulations] is subject to the following conditions: (a) the Debtors' compliance with each and every term of [the Stipulations' during the Extension Period…". Stipulations at ¶4. As detailed in CAVIC's Claims, Debtors failed to pay the stipulated rent payments to CAVIC 31 for the period beginning December 15, 2022 through February 1, 2023 (*see* Claim No. 1217, at Addendum p. 2), and failed to pay CAVIC 41 the stipulated payments for the period December 12,

2022 through February 1, 2023 (*see* Claim No. 1218, at Addendum p.2). Therefore, under the express provisions of the Stipulations, the Stipulations – and any extension of a "waiting period" or waivers by CAVIC provided therein - ceased to be effective.

Debtors' expert, Dr. Mokal, disagreed with Mr. Eriksson's opinion and instead opined that the Convention and Protocol have no bearing on *in personam* obligations of debtors to pay rent in insolvency proceedings and that the sole remedies under the Convention are the protection and return of and aircraft object, which are *in rem* remedies. As Dr. Mokal stated, the Convention has an "object-directed focus that it is not designed to provide an international framework for the provision of remedies other than in relation to the aircraft object. Instead, it leaves to the applicable domestic law of the forum of the proceeding (here, the United States) the choice and nature of such remedies as are not directed at protecting the creditor's ability to obtain possession and to protecting the aircraft object in the meanwhile." Mokal Dec. (Dkt. No. 2816 at ¶ 28.) However, Dr. Mokal's opinion relies extensively on the Official Commentary, which is not legally binding on national courts. *Airasia X Bhd v. BOC Aviation Ltd & Ors*, [2021] 10 MLJ 942; (Dkt. No. 2816 at p. 315, ¶ 271).

The Malaysian High Court in Kuala Lumpur, one of the few courts to have addressed a claim for compensation under the Convention's Alternative A in a written decision, disagreed with Dr. Mokal. In its well-reasoned decision of *Airasia*

(*see* Dkt. No. 2816 at 237), the Malaysian High Court examined whether Alternative

A required the debtors to pay the contractual rent after the waiting period had expired

or whether remedies under the Convention were limited to return of the aircraft. That

High Court stated:

> [283] As regard the interpretation of article XI(10) of the protocol, the said article is unambiguous and a literal, ordinary and natural meaning to be given to the words 'obligations under the agreement' does not produce an absurd result. *There can be no doubt that the phrase must include the obligation of the debtor to pay the rentals under the agreement*. To restrict the meaning of the word 'obligations' to only obligations relating to in rem matters is to read into the Articles words which are simply not there. There is nothing to suggest that the Cape Town Convention is to be viewed narrowly, in that it is only to cover in rem rights as asserted by learned counsel for AAX.

> [284] The word 'obligations' is also found in article XI(7) of the protocol which provides:

> 7. The insolvency administrator or the debtor, as applicable, may retain possession of the aircraft object where, by the time specified in paragraph 2, it has cured all defaults other than a default constituted by the opening of insolvency proceedings and has agreed to perform all future obligations under the agreement. A second waiting period shall not apply in respect of a default in the performance of such future obligations.

> [285] There is little doubt that the word 'obligations' in this article XI (7) must include the *in personam* obligation to pay rentals under the agreement. It will be incongruous that the same word in Article XI(10) bears a different and indeed a narrow meaning as suggested by learned counsel for AAX. [286] I also agree with learned counsel for Sky High that the prohibition under article XI(10) to permit the debtor to modify the obligations under the agreement except with the consent of the creditor is consistent with the purposes of the Cape Town Convention—to promote and reduce the costs of asset-based financing for airline equipment.

[287] This is why para 3.112 of the Official Commentary to the Cape Town Convention provides:

any provisions of domestic law modifying or empowering a court to modify the debtor's obligations must be disapplied where these could conflict with paragraph 10.

[288] However, the 'obligations' that cannot be modified without the consent of the lessors in this case are 'obligations under the agreement'. The Official Commentary to the Cape Town Convention makes this clear in para 3.112 where it provides as follows:

[3.112]. . .Though paragraph 10 only precludes modification of the debtor's obligations under the agreement, that it, the security agreement, title reservation agreement or leasing agreement relating to the aircraft object, and says nothing about security assignments of debtor's rights, it must be intended to cover these as well, particularly in view of the fact that paragraph 9, precluding prevention of or delay in the exercise of the creditors remedies permitted by the convention or Protocol, applies to all remedies, not merely relating to the aircraft objects. (Emphasis added.)

[289] Further, it is not insignificant that Article XI(11) under Alternative A of the protocol states:

(11)Nothing in the preceding paragraph shall be construed to affect the authority, if any, of the insolvency administrator under the applicable law to terminate the agreement.

[290] To my mind, reading Article XI(7), (10) and (11) together, Alternative A of the protocol provides the following protection to the creditor, namely*, in the event the debtor chooses not to terminate the agreement when an insolvency-related event has occurred or the creditor does not exercise its right to repossess the aircraft, the obligations under the agreement including the obligation to pay the rentals cannot be modified by the debtor unless with the consent of the creditor.*

Dkt. No. 2816 at 318-320 (emphasis added).

Interestingly, Dr. Mokal served as an expert in that case as a representative of the Aviation Working Group,[20] however he noted on cross examination that he was not relying on the correctness of that decision (which he attached to his declaration in this case), and indeed, it is clear the High Court did not rely on the correctness of Dr. Mokal's opinion either. Transcript at p. 50-51. The High Court noted it is difficult to reconcile Dr. Mokal's position that the Convention does not affect *in personam* rights in light of the clear language of Alternative A. *See* Dkt. No. 2816 at p. 318-319.

It is also worth noting that the High Court put the obligation to either return the aircraft or terminate the agreement on the debtor, stating "*in the event the debtor chooses not to terminate the agreement when an insolvency-related event has occurred or the creditor does not exercise its right to repossess the aircraft, the obligations under the agreement including the obligation to pay the rentals cannot be modified by the debtor unless with the consent of the creditor.*" *Id.* at p. 320.

The Bankruptcy Court, however, turned the obligation of the Debtors under the Convention to either return the aircraft or pay rent (and other contractual

---

[20] "Aviation working group (AWG) is a not-for-profit legal entity comprised of major aviation manufacturers, leasing companies and financial institutions that contribute to the development of policies, laws and regulations that facilitate advanced international aviation financing and leasing." https://awg.aero/inside-awg/who-we-are/

amounts) at the end of the waiting period on its head, ruling "[t]he report by Dr. Mokal, and the extensive quotations therein from the official commentaries to the Protocol, make clear that the remedies in Alternative A are 'object-related.' They require the return of aircraft at the end of a waiting period *unless* at that time there is a commitment to honor the pre-bankruptcy lease." Decision at p. 6 (emphasis in original). This permits Debtors to ignore their obligations under the Convention, ignoring the waiting period and obligations that arise when it expires, unless and until Debtors decide to assume or reject the agreement. This effectively guts the Convention's waiting period, including paragraph 7 of Alternative A which provides that the debtor "may retain possession of the aircraft object where, by the time specified in paragraph 2 [the waiting period], it has cured all defaults other than a default constituted by the opening of insolvency proceedings and has agreed to perform all future obligations under the agreement." It also ignores the clear wording of paragraphs 9 and 10 of Alternative A which provide:

> 9. No exercise of remedies permitted by the Convention or this Protocol may be prevented or delayed after the date specified in paragraph 2.

> 10. No obligations of the debtor under the agreement may be modified without the consent of the creditor.

Additionally, the Bankruptcy Court stated that:

> CAVIC agrees that most of its claims to recover rents following the rejection of the leases are prepetition general unsecured claims, and that this categorization of its claims does not constitute a 'modification' of the leases. The relevant question presently before the Court is not what

> the leases called for (which is not disputed), but what amounts are entitled to be treated as administrative expense obligations rather than as prepetition general unsecured claims."

Decision at p. 6. However, the fact that prepetition claims are unsecured, which is the case under the Convention as well, does not mean that the Bankruptcy Court can ignore the continued operation of the Aircraft in revenue service after the waiting period expired without making an election. The Bankruptcy Court confused complying with the Leases under the strictures of the Convention, which results in payment of the contractual amounts, with the U.S. bankruptcy notion of administrative claims, which may also result in payment of the contractual amount. However the fact that application of either may require the estate to pay for use of the Aircraft post-petition does not mean they are the same.

Lending further support to the position adopted by the Malaysian High Court and posited by CAVIC is Article 13 of Convention, which was undoubtedly adopted by the EU on behalf of its Member States and must be enforced by United States courts. It provides:

*Article 13*

**Relief pending final determination**

1.      Subject to any declaration that it may make under Article 55, a Contracting State shall ensure that a creditor who adduces evidence of default by the debtor may, pending final determination of its claim and to the extent that the debtor has at any time so agreed, obtain from a court speedy relief in the form of such one or more of the following orders as the creditor requests:

(a)     preservation of the object and its value;

(b)     possession, control or custody of the object;

(c)     immobilisation of the object; and

(d)     lease or, except where covered by subparagraphs (a) to (c), management of the object and the income therefrom.

Dkt. No. 2816 at p. 99.

Article 13(1)(c) requires the court to ensure that when there is evidence of a default, which is obvious in cases of a declared insolvency, provide speedy relief pending the final determination, which includes permitting the creditor to obtain the income from the use of the aircraft if not immobilized or returned to the creditor. Here the opposite occurred: the Debtors kept the income from Aircraft and ignored their obligations under the Leases, including their maintenance obligations. Nothing in the Convention supports such a result.

Additionally, Alternative A at paragraph 5(a) requires the debtor to "preserve the aircraft object and maintain it and its value *in accordance with the agreement*" until the creditor can repossess the aircraft; paragraph 6 clarifies that this requirement does not "preclude the use of the aircraft object under arrangements designed to preserve the aircraft object and *maintain it and its value*." (emphasis added). Here, Debtors operated the Aircraft in revenue service for months before ultimately rejecting the Leases – thereby *consuming* value, not maintaining value. The 9173 Lease requires Debtors to pay CAVIC 41 an amount at the end of the lease,

based on the aircraft maintenance value actually consumed by Debtors in operating MSN 9173 (here, $5,529,039.44). Such redelivery payments are intended to compensate a lessor for the aircraft value consumed by a lessee's operation and should be enforced by a Contracting State[21]. In denying CAVIC 41 the recovery of these maintenance payments and CAVIC 31 of its maintenance reserve payments (an aggregate of $6,237,945.01 for both Aircraft), Debtors have been permitted to consume value and to profit from the Aircraft at the expense of CAVIC, in contravention of Convention Article 13, and Protocol, Article XI, Alternative A paragraphs 5 and 6 which require Debtors to comply with its obligations under the Leases to preserve the equipment and "maintain it and its value." *Id.*

Even if the Cape Town Convention and Sweden's adoption of Alternative A was not applicable here, CAVIC would still be entitled to administrative priority for post-petition Rent and other payments due and owing pursuant to the 1660 Lease and 9173 Lease in light of Debtors' extensive operation and use of MSN 1660 and MSN 9173 prior to the Rejection Date. There is no dispute that Debtors operated both Aircraft extensively in revenue service post-petition, generating material

---

[21] *See* Official Commentary at ¶2.26 ("[w]hile Article XI(5)(a). . . requires the debtor to comply with its obligations under the agreement as to preservation of the equipment and maintenance of its value it does not prescribe the remedies. . . which are left to the agreement and the applicable law."); and ¶3.143 ("What constitutes the applicable law is to be determined by the rules of private international law of the forum State. . .").

revenues resulting in a significant benefit to the estate. Payments due to aircraft lessors for the debtor's use of a leased aircraft post-petition are generally treated as administrative expenses. *See, e.g., In re Airlift Int'l, Inc.*, 761 F.2d 1503, 1510 (11th Cir. 1985). In *Airlift International*, the Eleventh Circuit Court of Appeals observed "the administrative claim extends [] to the unperformed obligations of the trustee for the period the equipment was in the trustee's possession. The amount of the *administrative claim is determined by looking at the amount due under the agreement.*" 761 F.2d at 1511 (emphasis added). "The majority view is that the lessor is entitled to an administrative claim for the amount of unpaid rent called for by the underlying lease." COLLIER ON BANKRUPTCY ¶503.06[6][c].

## CONCLUSION

In light of the foregoing, Appellants respectfully request that this Court overturn the Bankruptcy Court's Decision and Claim Orders and direct the Bankruptcy Court to deny Debtors' Objections to CAVIC's Claims.

Dated: October 10, 2024
        New York, New York

WATSON FARLEY & WILLIAMS LLP

By: /s/ *John G. Kissane*
        John G. Kissane
        Celinda J. Metro
        120 West 45th Street
        New York, NY 10019
        Tel.: (212) 922-2200
        jkissane@wfw.com
        cmetro@wfw.com

36

## CERTIFICATE OF COMPLIANCE

I, John G. Kissane, counsel of record for Appellants, certify that this brief was prepared using Microsoft Word, and that this processing program has been applied to include all text other than what Fed. R. Bankr. P. 8015(g) allows to be excluded in preparing the following word count. I further certify that this brief contains 8,082 words.

By:  /s/ *John G. Kissane*