UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:

SAS AB, et al.,

                                          Reorganized Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CAVIC 31 DESIGNATED ACTIVITY COMPANY and
CAVIC 41 DESIGNATED ACTIVITY COMPANY,

                                          Plaintiffs-Appellants,

                              -against-

SCANDANAVIAN AIRLINES SYSTEM DENMARK-
NORWAY-SWEDEN and GORM LIGHT BLUE LIMITED,

                                          Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/04/25

24-cv-6159 (LAK)
[Case No. 22-10925 (MEW)]

## MEMORANDUM OPINION

Appearances:

John G. Kissane
Celinda J. Metro
WATSON FARLEY & WILLIAMS LLP

*Attorneys for Plaintiffs-Appellants CAVIC 31
Designated Activity Company and  CAVIC 41
Designated Activity Company*

Gary T. Holzer
Theodore E. Tsekerides
Kelly DeBlasi
David N. Griffiths
WEIL, GOTSHAL & MANGES LLP

*Attorneys for Defendants-Appellees
Scandanavian Airlines System Denmark-
Norway-Sweden and Gorm Light Blue Limited*

2

LEWIS A. KAPLAN, *District Judge.*

   Appellants CAVIC 31 Designated Activity Company ("CAVIC 31") and CAVIC 41 Designated Activity Company ("CAVIC 41") (collectively, "CAVIC") appeal from orders of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") disallowing and expunging certain claims and reducing other claims made against Appellees Scandanavian Airlines System Denmark-Norway-Sweden and Gorm Light Blue Limited (collectively, "Debtors"). The disputed claims arise from Debtors' use of CAVIC's aircraft after Debtors filed Chapter 11 petitions. CAVIC argues that the Bankruptcy Court should have applied international law, rather than the U.S. Bankruptcy Code, in determining the amount and priority of its claims. Debtors counter that the Bankruptcy Court properly applied U.S. bankruptcy law in determining the amount and priority of Appellants' claims and that the application of international law would not affect the Bankruptcy Court's ruling.

### *Facts and Background*

   On July 5, 2022, Debtors filed petitions for relief under chapter 11 of the United States Bankruptcy Code.[1] Before filing, Debtors leased two passenger aircraft from CAVIC, MSN 1660 and MSN 9173.[2] On November 1, 2022, the Bankruptcy Court approved two stipulations regarding Debtors' continued use of the aircraft.[3]

---

[1]
  Dkt 1-1 at 2.

[2]
  *Id.* The actual lessor in one case was Wilmington Trust SP Services (Dublin) Limited as Owner Trustee, but CAVIC is the party with the economic interest. *Id.* at 2 n.1.

[3]
  Dkt 9-1 at A031–68.

3

The stipulations reserved the parties' rights as to whether and what extent the aircraft were subject to the Convention on International Interests in Mobile Equipment (the "Cape Town Convention"), its related Protocol on Matters Specific to Aircraft Equipment (the "Protocol"), and Alternative A of Article XI of the Protocol ("Alternative A").[4]  As set forth by the Bankruptcy Court, the Convention and Protocol "provide a mechanism for the international creation and registration of security interests and other interests in aircraft. Alternative A . . . contains provisions that, if adopted by a Contracting State, may govern the use of aircraft by borrowers or lessees who are the subject of insolvency proceedings."[5]  Where Alternative A applies, a debtor must return an aircraft at the end of a designated waiting period unless the debtor has cured all outstanding defaults (other than defaults represented by the existence of the insolvency proceedings) and agrees to perform its future obligations under the relevant agreements.[6]

Under the stipulations, the parties agreed to extend the waiting period set by Section 365(d) of the Bankruptcy Code and, to the extent it applied, the waiting period under Article XI of Alternative A. Under Section 365(d)(5), a trustee must perform "all of the obligations of the debtor" under a personal property lease after the waiting period expires until the lease is assumed or

---

[4]

       *Id.* at A032, A051.

[5]

       Dkt 1-1 at 1.

[6]

       Alternative A ¶ 7.

4

rejected.[7]  Appellees ultimately rejected the prepetition leases before the expiration of the extended waiting period.[8]

The parties agreed also that Debtors would pay reduced rental rates to Appellants during the extended waiting period.[9]  CAVIC reserved its right to "assert that the amount and/or priority of the rent or other payables required to be paid under Alternative A, the other provisions of the Cape Town Treaty, the Bankruptcy Code and/or other applicable law during the Waiting Period as extended hereunder are greater than" the reduced rental rates.[10]

After Debtors rejected the leases, CAVIC filed proofs of claim relating to the rejection of the leases and Appellees' post-petition use of the aircraft. For MSN 1660, CAVIC 31 seeks an administrative expense claim of $5,661,465.08 and a general unsecured claim of $37,713,973.09.[11]  For MSN 9173, CAVIC 41 seeks an administrative expense claim of $6,268,814.17 and a general unsecured claim of $3,881,015.87.[12]  The claimed administrative expense amounts for both claims were based on the prepetition rental rates.

Debtors objected to the claims.  For MSN 1660, Debtors asserted that (1) the administrative expenses should be reduced to $375,000, the amount owed based on the stipulated

---

[7]     11 U.S.C. § 365(d)(5).

[8]     Dkt 1-1 at 3.

[9]     Dkt 9-1 at A035, A054.

[10]    *Id.* at A037, A056.

[11]    *Id.* at A012.

[12]    *Id.* at A027.

5

reduced rate, and (2) the general unsecured claim should be reduced to $31,853,740.82 due to the

purportedly incorrect inclusion of certain maintenance reserves in the claim.[13]  For MSN 9173,

Debtors asserted that (1) the administrative expenses should be reduced to $435,000, the amount

owed based on the stipulated reduced rate, and (2) the general unsecured claim should be increased

from $3,881,015.87 to $8,934,710.87 due to the purportedly incorrect classification of an end-of-

lease payment and other claimed damages.[14]

On July 17, 2024, the Bankruptcy Court conducted a hearing on the objections.  After

hearing testimony from Debtors' and CAVIC's respective experts on the applicable law, the

Bankruptcy Court stated that it would sustain Debtors' objections.[15]   On July 22, 2024, the

Bankrupty Court issued its Decision and Claim Orders sustaining the objections.[16]


*Discussion*

The parties dispute (1) whether Alternative A applies here and, if it does, (2) what

effect it has on CAVIC's claims.[17]  The Bankruptcy Court held that Alternative A does not apply

because the primary insolvency jurisdiction — in this case, Sweden — had not issued the necessary

declaration under the Convention to give international effect to its adoption of Alternative A in its

---

[13]

Dkt 9-2 at A401.

[14]

*Id.*

[15]

Dkt 9-4 at A879.

[16]

Dkt 1-1.

[17]

Dkt 6 at 6; Dkt 9 at 4–5.

domestic law.[18]   The Bankruptcy Court further held that Alternative A would not require classification of rental payments at prepetition lease rates or maintenance expenses as an administrative expense were it applied. [19]  This Court reviews these legal conclusions *de novo*.[20]

1.       *Applicability of Alternative A*

Alternative A "applies only where a Contracting State that is the primary insolvency jurisdiction has made a declaration pursuant to Article XXX(3)."[21] Such a declaration "shall be notified in writing to the Depositary,"[22] the International Institute for the Unification of Private Law (UNIDROIT).[23]  UNIDROIT then must inform all Contracting States of the declaration.[24]

Here, Debtors' primary insolvency jurisdiction is Sweden.  Although Sweden has adopted Alternative A in its domestic law, it has not made a declaration to this effect or provided the notification to UNIDROIT required to give international effect to its adoption.[25]   Indeed,

---

18

       Dkt 1-1 at 4–5.

19

       *Id.* at 5–8.

20

       *In re AMR Corp.*, 610 B.R. 434, 444 (S.D.N.Y. 2019).

21

       Alternative A ¶ 1.

22

       Protocol, Art. XXXII(2).

23

       *Id.* Art. XXXVII(1).

24

       *Id.* Art. XXXVII(2)(a)(iii).

25

       Dkt 9-2 at A465.

7

UNIDROIT's website[26] and Principal Legal Officer[27] indicate that Sweden has not made the required declaration and notification.  CAVIC provided no evidence to the contrary.

CAVIC argues that Sweden's adoption of Alternative A in its domestic law has international effect.  Member States of the European Union ("EU") like Sweden are prohibited by EU law from making declarations themselves.[28]  CAVIC asserts that "[t]he EU noted in its adoption of the Convention and Protocol that . . . [Member States] are free to adopt domestic legislation to supplement the Protocol as adopted by the EU."[29]  Even if this were a correct statement of EU law, it would have no bearing on the application of the Protocol.  In fact, multiple Member States have made Alternative A declarations that are effective as a matter of public international law.[30] Moreover, according to the Official Commentary on the Convention and the Protocol,[31] UNIDROIT will accept a notification from a Member State in lieu of a formal declaration, so long as the notification otherwise conforms to the requirements that a declaration must meet.[32]  Multiple EU

---

26

  *Id.* at A466; Dkt 9-4 at A762, A770.

27

  Dkt 9-2 at A467.

28

  *Id.* at A463–64.

29

  Dkt 6 at 12.

30

  Dkt 9-2 at A464 n.55 (noting Denmark and Luxembourg have made Alternative A declarations); *see also* Dkt 9-4 at A764–67.

31

  Roy Goode, *Official Commentary to the Convention on International Interests in Mobile Equipment and Protocol Thereto on Matters Specific to Aircraft Equipment* (Revised 5th Ed. 2024).

32

  Dkt 9-2 at A465.

8

Member States have submitted notifications to UNIDROIT, which treats such notifications as declarations.[33]

CAVIC cites language on UNIDROIT's website stating, "European Member States . . . may amend their national law so as to result in the same substantive outcomes as if a declaration had been made under Article XXX(3)."[34]  CAVIC argues that this language conclusively supports its position.  Not so.  First, language on UNIDROIT's website does not contravene the explicit requirements of the Protocol.  Second, the same webpage includes information about the notifications it has received from EU members, including Malta, Ireland, and the United Kingdom, but does not reflect any notification from Sweden.[35]  Third, CAVIC has offered no evidence that UNIDROIT otherwise has recognized Sweden's adoption of Alternative A or informed other Contracting States as to its adoption.

Notwithstanding the Protocol, CAVIC argues also that Swedish law — and therefore, Alternative A — should apply rather than U.S. bankruptcy law under New York's choice of law

---

[33]

    *Id.* at A464–65.

[34]

    UNIDROIT, *Declarations deposited under the [Protocol] regarding XXX(3)*, https://www.unidroit.org/instruments/security-interests/aircraft protocol/depositary/declarations-deposited-under-the-protocol-to-the-cape-town convention-on-international-interests-in-mobile-equipment-on-matters-specific-to aircraft-equipment-arranged-by-article/article-xxx3/ (last visited March 4, 2025).

[35]

    *Id.*  UNIDROIT received a notification from the United Kingdom when it was still an EU member.  Dkt 9-2 at A466.

rules.[36]  It cites *Pescatore v. Pan Am. World Airways, Inc.*,[37] for the proposition that federal courts

apply the forum state's choice of law rules even where jurisdiction is predicated on a federal question

presented under a Convention.  But jurisdiction here is not predicated on a federal question presented

under a Convention — it arises under the Bankruptcy Code.  CAVIC has pointed to no case in which

a bankruptcy court engaged in a choice of law analysis to determine whether foreign law should

apply instead of U.S. bankruptcy law.[38]

      Accordingly, the Bankruptcy Court correctly determined that Alternative A is not

applicable to the relevant leases and aircraft.

---

[36]
    Dkt 6 at 20–22.

[37]
    97 F.3d 1 (2d Cir. 1996).

[38]
    The Court is aware of the Second Circuit's holding in *In re Maxwell Communication Corp. plc by Homan,* 93 F.3d 1036 (2d Cir. 1996), that it may be appropriate in some circumstances for a bankruptcy court to conduct a choice of law analysis as a matter of international comity — not based on a forum state's choice of law rules.  *Id.* at 1049 (2d Cir. 1996) ("Nor are we persuaded by the . . . assertion that the Bankruptcy Code always applies, comity notwithstanding, when a bankruptcy case has been properly commenced, and that choice-of-law analysis is never appropriate in a bankruptcy case.").  CAVIC did not make an international comity-based argument before the Bankruptcy Court or in its appeal to this Court, and neither party has addressed the applicability of this doctrine here.  This argument therefore has been waived.  *See, e.g.*, *United States v. Keshner*, 794 F.3d 232, 235 (2d Cir. 2015); *In re Markus*, 620 B.R. 31, 36 (S.D.N.Y. 2020).  In any event, unlike here, *In re Maxwell* involved parallel insolvency proceedings in different countries, which provided a strong justification for a comity analysis.  93 F.3d at 1052 ("[A] different result might be warranted were there no parallel proceeding in England.").  That case is distinguishable also because here, Sweden could have made its adoption of Alternative A effective as a matter of public international law but did not to do so.  To defer to a primary insolvency jurisdiction's adoption of Alternative A in its domestic laws as a matter of comity would vitiate the straightforward requirements provided for in the Protocol to give that adoption international effect.

2.      *Application of Alternative A*

The Bankrupcty Court further held that "even if Alternative A were applicable, it would not have the effect that CAVIC contends."[39]  Alternative A provides that a debtor must return an aircraft at the end of a designated waiting period unless the debtor has cured all outstanding defaults (other than defaults represented by the existence of the insolvency proceedings) and agrees to perform its future obligations under the relevant agreements.[40]  Relying on the stipulations extending the waiting period, the Bankruptcy Court concluded that Debtors never had an obligation to cure all outstanding defaults — that is, to pay the amounts owed under the prepetition leases — because Debtors rejected the leases before the expiration of the extended waiting period.[41]

CAVIC argues that the waiting period expired on September 3, 2022, before the stipulations were signed, thereby triggering Debtors' obligation to cure all defaults at that time. However, as the Bankruptcy Court noted, "CAVIC agreed in [the] Stipulation that (a) the waiting periods had not expired, and (b) [] the Debtors had not made an 'election' to cure defaults and to make full payments in accordance with the leases."[42]  Alternative A does not specify what payments a debtor must make during a waiting period, nor does it specify the classification or priority that should be assigned to any claim arising from the difference between a contractual amount owed and

---

[39]     Dkt 1-1 at 5.

[40]     Alternative A ¶ 7.

[41]     Dkt 1-1 at 5.

[42]     *Id.* at 6.

the amount paid during a waiting period.[43]

That CAVIC reserved its rights as to the applicability of the Protocol and Alternative A in the stipulations does not nullify the stipulated extensions of the waiting period. The stipulations reserved the right to "assert that the amount and/or priority of the rent or other payables required to be paid under Alternative A . . . *during the Waiting Period as extended* hereunder are greater than" the reduced rental rates.[44]  This reservation of rights applies to the law that governs CAVIC's claims — not how that law should be applied.  The stipulations unambiguously extended the waiting period, regardless of whether Alternative A applied.[45]  CAVIC points to language in exhibits attached to each stipulation, which states, "Nothing contained herein may be deemed to waive [CAVIC's] claims for the difference between" the rent owed under the stipulations and the rent owed under the prepetition leases.[46]  In context, "herein" refers to the exhibits themselves, which contain the lower rental rates Debtors agreed to pay during the extended waiting period, not the entire stipulations, which include the agreement to extend the waiting period.

CAVIC further argues that, under Alternative A, "[n]o obligations of the debtor under the agreement may be modified without the consent of the creditor."[47]  Per this view, the Bankruptcy Court impermissibly modified Debtors' obligations to pay the full lease amounts without CAVIC's

---

[43]

    *Id.* at 7.

[44]

    Dkt 9-1 at A037, A056 (emphasis added).

[45]

    *Id.* at A032–33, A051–52.

[46]

    *Id.* at A046, A065.

[47]

    Alternative A ¶ 10.

12

consent.  But as the Bankruptcy Court correctly explained, "[t]he issue here . . . has nothing to do

with any 'modification' of the leases. . . .  The relevant question presently before the Court is not

what the leases called for (which is not disputed), but what amounts are entitled to be treated as

administrative expense obligations rather than as prepetition general unsecured claims."[48]  Neither

Alternative A nor any other provision of the Convention or Protocol dictates claim classification or

priority.[49]  These determinations are left therefore to the bankruptcy law of the jurisdiction where the

bankruptcy case is pending.[50]

       CAVIC's reliance on *Airasia X Bhd v. BOC Aviation Ltd & Ors*[51] is misplaced.

There, the Malaysian High Court held that, under Alternative A, "in the event the debtor chooses not

to terminate the agreement when an insolvency-related event has occurred or the creditor does not

exercise its right to repossess the aircraft, the obligations under [a lease] agreement including the

obligation to pay the rentals cannot be modified by the debtor unless with the consent of the

creditor."[52]  First, a decision of a foreign court is not binding on this Court.  Second, the decision

addressed the obligations of a debtor retaining possession of an aircraft *after* the expiration of the

waiting period.  The decision says nothing about Alternative A's application to the obligation of a

debtor who, like Debtors here, rejects a lease before the expiration of the waiting period.  Nor does

---

[48]

       Dkt 1-1 at 6; *see also* Dkt 9-2 at A460–62.

[49]

       *See* Dkt 9-2 at A456–A460.

[50]

       Convention, Art. 5(2).

[51]

       High Court (Kuala Lumpur), 10 Malayan L. J. 942 (Feb. 19, 2021) [Dkt 9-3 at A621–716].

[52]

       *Id.* at 1024 [Dkt 9-3 at A703].

the decision address what priority that obligation has in bankruptcy.[53]

In the alternative, CAVIC contends that the stipulations ceased to be effective upon Debtors' nonpayment of the amounts due under the stipulations, thereby triggering an obligation to pay the full prepetition lease amounts.[54] However, the stipulations required CAVIC to provide notice of a breach and a 10-day cure period to Debtors.[55] CAVIC did not provide any such notice. CAVIC argues that the notice requirement did not apply to breaches based on non-payment.[56] This argument ignores the unambiguous provision that "the Parties shall not have any right to terminate this Stipulation except as provided in this Paragraph 5 or in [an irrelevant provision regarding heavy maintenance]."[57] Paragraph 5 required CAVIC to give Debtors notice of any breach and a 10-day cure period. Debtors' nonpayment of the rental amounts due under the stipulations therefore did not terminate the extended waiting period.

Finally, CAVIC contends that it is entitled to administrative priority for certain maintenance payments under paragraph (5) of Alternative A, which requires that the debtor "preserve the aircraft object and maintain it and its value in accordance with the agreement."[58] CAVIC argues

---

[53]

   *See* Dkt 9-4 at A860–61.

[54]

   Dkt 6 at 27–28.

[55]

   Dkt 9-1 at A034, A053.

[56]

   Dkt 10 at 9–10.

[57]

   Dkt 9-1 at A034, A053.  The term "Stipulation" refers to the entire document, not the individual paragraph at issue. *Id.* at A031, A50.

[58]

   Alternative A ¶ 5(a).

that the maintenance payments it seeks "are intended to compensate a lessor for the aircraft value consumed by a lessee's operation and should be enforced by a Contracting State."[59]  CAVIC's argument founders on several points.  First, the preservation clause applies "[u]nless and until the creditor is given the opportunity to take possession . . . ."[60]  Under the stipulations, CAVIC had the opportunity to take possession of the aircraft.[61]  Second, Alternative A expressly does not "preclude the use of the aircraft object under arrangements designed to preserve the aircraft object and maintain it and its value."[62]  The stipulations allowed Debtors to continue using the aircraft during the extended waiting period and set forth maintenance obligations designed to maintain the aircrafts' value.[63]  Third, Alternative A does not say that a creditor is entitled to maintenance payments where a debtor fails to preserve the aircraft or that such payments are entitled to a certain priority in insolvency proceedings.

Accordingly, even if Alternative A applied, it would not disturb the Bankruptcy Court's decision sustaining the objections to CAVIC's claims.

3.    *Classification and Prioritization of CAVIC's*

Although CAVIC does not challenge the Bankruptcy Court's application of the

---

[59]

Dkt 6 at 35.

[60]

Alternative A ¶ 5.

[61]

Dkt 9-1 at A033–34, A052–53.

[62]

Alternative A ¶ 6.

[63]

Dkt 9-1 at A036, A055.

15

Bankruptcy Code in its statement of the issues raised on appeal,[64] CAVIC argues in its brief that its claims would be entitled to administrative priority even if Alternative A did not apply. It argues that payments due to aircraft lessors generally are treated as administrative expenses under the Bankruptcy Code, citing *In re Airlift Int'l, Inc.* for the proposition that "[t]he amount of the administrative claim is determined by looking to the amount due under the agreement."[65] But the "agreement" referenced there was not a prepetition lease — it was a post-petition Section 1110 agreement analogous to the stipulations here.[66]

> The Bankruptcy Court correctly held — and CAVIC does not dispute — that CAVIC is entitled to administrative expense claims for the fair market rental values of the aircraft while they were in Debtors' possession. In the Bankruptcy Court, "CAVIC . . . contended that the amounts specified in the stipulations did not necessarily represent the true values of the aircraft. [The Bankruptcy Court] gave CAVIC the opportunity to have a further hearing to the extent that it wished to present further evidence or argument as to these points, but the parties informed the Court that they had reached an agreement as to the calculation of the claims following the initial hearing and that no further hearing would be required."[67] CAVIC has not asserted that the Bankruptcy Court's ruling contravened the parties' agreement or that the Bankruptcy Court overlooked additional evidence as to the fair market rental values of the aircraft.

---

[64]     Dkt 6 at 6.

[65]     761 F.2d 1503, 1511 (11th Cir. 1985).

[66]     *Id.*

[67]     Dkt 1-1 at 8.

Accordingly, the Bankruptcy Court's classification and prioritization of CAVIC's claims under the Bankruptcy Code was correct.

### Conclusion

The decision and orders appealed from are affirmed.

SO ORDERED.

Dated:        March 4, 2025

_____
Lewis A. Kaplan
United States District Judge